UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

RICHARD LANCE CLINE, JR.

CRIMINAL ACTION

NO. 23-19-JWD-SDJ

**RULING AND ORDER**

Before the Court is an *Opposition to Government's Intention to Offer Rule 404(b) Other Acts Evidence* ("*Opposition*") filed by Defendant Richard Lance Cline, Jr. ("Defendant" or "Cline"). (Doc. 52.) This *Opposition* was filed in response to the Government's *Notice of Intent to Offer Intrinsic/Other Acts Evidence* ("*Notice*"), (Doc. 50), and *Amended Notice of Intent to Offer Intrinsic/Other Acts Evidence* ("*Amended Notice*"), (Doc. 51). As such, the Court treats the Defendant's *Opposition* as a Motion in Limine. An evidentiary hearing was held on March 20, 2024. (Doc. 56.) The Court has carefully considered the law, the arguments, and the submissions of the parties and is prepared to rule. For the following reasons, Defendant's *Opposition* is denied.

I. **BACKGROUND**

On March 29, 2023, a federal Grand Jury indicted Cline with two counts of the knowing and intentional distribution of 50 or more grams of actual methamphetamine, ("Count One" and "Count Two"). (Doc. 1 at 1). The Grand Jury also indicted Cline with one count of the knowing and intentional possession, with intent to distribute, of 3,4-methylenedioxymethamphetamine ("MDMA" or "ecstasy"), 50 grams or more of a substance containing a detectable amount of methamphetamine, and buprenorphine ("suboxone"), (collectively, "Count Three"). (*Id.*) The violations described in Counts One, Two, and Three occurred on February 25, March 3, and March 9, 2021, respectively. (*Id.*)

1

On December 14, 2023, Cline filed a *Petition for Writ of Habeas Corpus Ad Testificandum* ("*Petition*") in which he sought to have Frank Beauchamp, Jr., ("Beauchamp"), who is held under the authority of the United States Marshal for the United States District Court for the Middle District of Louisiana pursuant to case number 23-cr-15-SDD-SDJ, testify as a witness at his trial. (Doc. 48 at 1.) The Court granted Cline's *Petition*. (Doc. 49.) Within this *Petition*, Cline argued that Beauchamp's testimony would support his defense that he was entrapped by the Government. (Doc. 48 at 1.) In light of this, the Government filed Doc. 50 (*Notice*) and Doc. 51 (*Amended Notice*), in which it informed Cline that it intends to offer the following evidence of his extrinsic and intrinsic acts to counter his entrapment defense:

1. An undercover purchase of heroin, methamphetamine, and Xanax from the [D]efendant on February 3, 2021, at or near 1800 block of 71st Avenue, Baton Rouge, Louisiana.

2. Seizure on March 9, 2021, by the Livingston Sheriff's Office at XXX64 Weiss Rd[.], Walker, Louisiana and XXX57 McLin Rd., Livingston, Louisiana of controlled substances such as ecstasy (MDMA), heroin, amphetamine, hash oil, alprazolam, and clonazepam, drug trafficking paraphernalia, such as digital scales, vacuum sealers, electronic money counters, and a marijuana grinder, firearms[,] ammunition, a bank bag containing approximately $671, and multiple bank bags containing approximately $28,055 in cash. (See Attachment No. 1), Redacted Livingston Sheriff's Office Report No. 21-00003608. (See also Attachment No. 2), Bill of Information & Court Minutes, *State v. Richard L. Cline*, Docket No. 42795.

3. On September 25, 2022, a prison guard at the Livingston Parish Prison found a clear bag containing 30 dosage unites of suspected [s]uboxone in the [D]efendant's right sock. The guard found approximately 2.5 grams of suspected crushed Xanax in the [D]efendant's left sock. The [D]efendant admitted possessing these controlled substances having obtained those after he was transported earlier to court. The guard concluded that the quantity of drugs he found and seized was consistent with an intent to distribute. (See Attachment No. 3), Redacted Incident Report 2200015188 and Cline's Written Statement.

4. Should the [D]efendant call Frank Beauchamp to testify surrounding his defense of entrapment, the United States intends to cross-examine him

2

>surrounding his drug trafficking relationship with the [D]efendant prior to March 9, 2021.

(Doc. 51 at 1–2.)

Cline then filed his *Opposition*, (Doc. 52), and in response the Government filed a *Memorandum in Support of Offering Other Acts Evidence*, (Doc. 54). Given Cline's request for a hearing in his *Opposition*, the Court treats the Government's *Notice* and *Amended Notice* as evidentiary motions. (*See* Doc. 53.)

An evidentiary hearing was held on March 20, 2024. (Doc. 56.) At the request of counsel for Defendant, the Court ordered post-hearing briefs to be filed within 30 days of the hearing and any reply-briefs to be filed 14 days thereafter. (*Id.*) The parties have filed such. (*See* Docs. 60–62.) Also, at the evidentiary hearing the Defendant's counsel "drew to the Court's and the undersigned's attention that the Government's Memorandum contained a mistake, and that the [D]efendant had bonded out of prison following his arrest o[n] March 9, 2021." (Doc. 58 at 2.) The Government corrected this mistake through filing Document 58, *Unopposed Motion to Offer Evidence of Defendant's Custodial Status Since Arrest of March 9, 2021*, which the Court granted on April 4, 2024. (Doc. 59.)

**II. DISCUSSION**

    **A. Parties' Arguments**

        *1. Amended Notice (Doc. 51)*

The Government argues that to combat the Defendant's entrapment defense, the above mentioned "evidence will be offered to prove [D]efendant's predisposition to commit the crimes alleged in the indictment." (Doc. 51 at 2.)

3

## 2. Defendant's Opposition (Doc. 52-1)

In opposition, Defendant argues that the evidence the Government intends to introduce should be excluded pursuant to FRE 404(b), 401, and 403. (Doc. 52-1 at 2–3.) According to Defendant, the Government's evidence would do nothing more than purport guilt on the Defendant through offering evidence of his character or traits, and the Government has not established a specific purpose for offering such evidence that would be permitted under Rule 404(b). (*Id.* at 2.) Such evidence by the Government is both irrelevant under Rule 401 and is overly prejudicial under Rule 403. (*Id.*) "Further, it would tend to risk a conviction of [Defendant] based on matters not at trial in this case[] and intended by the Government to bootstrap or bolster weaknesses in its case-in-chief." (*Id.* (emphasis omitted).) In short, the Government's use of extrinsic evidence is nothing more than an attempt to put on evidence of Defendant's bad character. (*Id.*) For such "evidence to be admissible under Rule 404(b), the Government must set forth under a two-part analysis, that it is relevant and is not offered for the purpose of showing bad character/trait, and that the probative value of such weighs against any unfair prejudice to the Defendant." (*Id.* 2–3.)

## 3. Government's Memo in Support (Doc. 54)

The Government begins its argument by explaining that minutes before his March 9, 2021 arrest outside of a Home Depot in Zachary, Louisiana, Cline constructively possessed the items that the Livingston Sheriff's deputies found later that day at his residence. (*Id.* at 10.) These items included magnetic containers, $28,055 in cash, a glass jar containing marijuana seeds, two vacuum sealed bags, each containing 100 dosage units of Xanax, two bags of methamphetamine weighing approximately 79 grams, one vacuum sealed bag containing 134 dosage unite of ecstasy, and another bag containing 1,319 dosage units of ecstasy, a suspected drug ledger, a handgun, a Mossberg Maverick 12 gauge shotgun, a Smith & Wesson .40 caliber pistol, digital scales, 58

4

dosage units of alprazolam, a money counter, two bags of heroin, and a Rom Arms AK-47 rifle with magazine and ammunition. (*Id.* at 10 n.18.) The Government argues that

> he exercised constructive possession over the contraband found by Livingston Sheriff's deputies in Livingston Parish as he was on his way to meet the undercover agent at the Home Depot, carrying methamphetamine, ecstasy, and suboxone to distribute to that agent. Surely, such possession makes the evidence found at his residence intrinsic to the violation alleged in Count Three of the Indictment.

(*Id.* at 10 (emphasis omitted).) Moreover, during his re-arraignment at the 21st Judicial District Court in Livingston Parish for felon in possession of a firearm and possession with intent to distribute heroin, Cline told the court he lived at XX764 Weiss Rd. in Walker, Louisiana, and acknowledged that the State could convict him of both violations with the evidence they possessed. (*Id.*)

The Government also argues that "[t]he suboxone prison guards found in [Cline's] left sock on September 25, 2022, a year and a half following his arrest on March 9, 2021, should be admissible to prove predisposition[]" because "subsequent acts may be admissible to prove predisposition." (*Id.* at 11.)

With regard to Defendant's FRE 401 and 403 arguments, the Government argues:

> The danger of unfair prejudice does not exist because the [D]efendant is already charged with drug trafficking violations. The fact that additional drugs were found by Livingston sheriff deputies at his residence the same day of his arrest is not such a startling event giving rise to the danger that a jury will reach a verdict on an improper basis. After all, during an earlier transaction, he had sold a pound of methamphetamine to the undercover agent and was carrying 14 ounces of methamphetamine and 2000 dosage units of ecstasy when he was arrested.
>
> Furthermore, the large amounts of cash, the wide variety of controlled substances, the tools of the trade . . . found at the residence, such as digital scales and number of firearms, go to show the [D]efendant's vigorous and enthusiastic participation in the drug trafficking crimes for which he stands charged. This evidence coupled with [D]efendant's offer to sell the undercover agent different kinds of controlled substances is highly probative towards showing that this [D]efendant thoroughly relished the trade he practiced.

5

(*Id.*)

Lastly, the Government argues that any testimony in relation to Beauchamp and Cline's "drug trafficking relationship . . . would be highly probative because it addresses the issue of [D]efendant's predisposition to commit the charged offenses, particularly since the [D]efendant, during two different phone conversations, employed Beauchamp as a reference, who would vouch for his integrity and reliability as a drug trafficker." (*Id.* at 12.)

> 4. *Government's Unopposed Motion to Offer Evidence of Defendant's Custodial Status Since Arrest of March 9, 2021 (Doc. 58)*

At the March 20, 2024 evidentiary hearing, Defendant's counsel "drew to the Court's . . . attention that the Government's Memorandum contained a mistake[] and that the [D]efendant had bonded out of prison following his arrest of March 9, 2021." (Doc. 58 at 2.) In light of this, the Government filed an *Unopposed Motion to Offer Evidence of Defendant's Custodial Status Since Arrest of March 9, 2021*, (Doc. 58), which the Court granted, (Doc. 59).

In the unopposed motion, the Government explains that "[o]n page 11 of its Memorandum, the undersigned wrote that evidence of a [D]efendant's subsequent acts may also be admissible to prove predisposition[,]" and "[i]n the sentence which followed, the undersigned argued that the suboxone 'prison guards found in the left sock on September 25, 2022, a year and a half following his arrest on March 9, 2021, should be admissible to prove predisposition.' " (Doc. 58 at 1.) The Government then explains that it "then dropped a footnote citing cases where a defendant's length of imprisonment between the 'other act' evidence and the charged violation were excluded when estimating temporal proximity." (*Id.*) "Though not intended to, this footnote could lead a reader to reach the mistaken inference that since March 9, 2021, the [D]efendant was in continual custody until authorities found the suboxone on September 25, 2022." (*Id.* at 2.)

6

After reviewing documents from the 19th Judicial District Court, Parish of East Baton Rouge, Baton Rouge, Louisiana, and the Warden of Livingston Parish Sheriff's Detention Facility, the Government realized that it "misunderstood the statement written by the [D]efendant on September 24, 2022, to mean that agents found suboxone on him after he was transported from prison to the state courtroom in Livingston Parish to plead guilty." (*Id.*) "A close and careful reading of [D]efendant's written statement would have revealed that he brought the suboxone into court before pleading guilty, and thereafter transported that controlled substance to the Livingston Detention Center, where, a few days later, authorities found [it] in his possession." (*Id.* at 3.) In light of this mistake, the Government, without opposition, submitted the following exhibits for purposes of the evidentiary hearing:

- U.S. Exhibit #12: Redacted Appearance Bond of March 9, 2021, executed on March 16, 2021.
- U.S. Exhibit #13: Email from Lt. Col. Lance Landry, "Breakdown of Cline's History at Livingston Parish Detention Facility."
- U.S. Exhibit #13-a: Letter from Livingston Parish Facility Center, date of arrest March 19, 2021.
- U.S. Exhibit #13-b: Letter from Livingston Parish Facility Center, date of arrest April 17, 2022.
- U.S. Exhibit #13-c: Letter from Livingston Parish Facility Center, date of arrest June 21, 2022.
- U.S. Exhibit #13-d: Letter from Livingston Parish Facility Center, date of arrest September 22, 2022.

(*Id.*)

5. *Defendant's Post-Hearing Brief (Doc. 60)*

In his post-hearing brief, Defendant largely raises similar arguments to those in his original *Opposition*. However, he does also raise the following:

> As Defense also brought out at the hearing, it had not made a decision on how it intends to proceed at trial, and whether or not entrapment will be an issue. It is understood that such a defense may well lead to a *motive* issue, but that determination has not been made at this point. Again, that is why it is requested the Court withhold a decision until trial has commenced and the evidence unfolds,

7

and the defense of Defendant goes forward. Evidence of the nature proposed by the Government, as disclosed in the Government's notice, must clearly articulate how such fits into a chain of logical inferences. In light of such, the general principle remains, that evidence of an extrinsic offense[] is never admissible [to clearly] show Defendant's bad character. *U.S. v. Garza*, 990 F.2d 171, 176–77, rehearing denied (5th Cir. 1993).

(Doc. 60 at 3.)

Further, with regard to the evidence relating to the possession of controlled substances in the Livingston Parish Detention Center, the Defendant argues that this evidence "is not in any way connected to the three counts of the Indictment and occurred over eighteen months subsequent to the last incident under [C]ount [Three] of the same." (*Id.* at 4.) Contrary to the Government's original assertion, when the "Defendant was in Court in the 21st Judicial District of Louisiana, . . . Defendant was under the belief he would be remanded on that date to serve [a] ten (10) year term." (*Id.*) The Defendant was not able to plead on that day because he ingested a controlled substance that prevented him from knowingly and voluntarily entering a plea. (*Id.*) He was then remanded to the Livingston Parish Detention Center, and when booked, deputies discovered that the Defendant was in possession of a controlled substance. (*Id.*) Thereafter, "Defendant, voluntarily, gave a written statement . . . to Livingston Parish that he was under very bad judgment brought on by his prescription medications, and was concerned he would detox harshly, if he did not have the medications to slowly detoxify." (*Id.*) Thus, Defendant argues that possession of the controlled substances "was not for the purpose of distribution to anyone except to himself." (*Id.*)

As such, "[t]he event is remote in time to the offenses charged and totally, otherwise, unrelated[,]" and "as set out in *Beechum*, the temporal remoteness deprecates the probity to the extrinsic offense." (*Id.*) Although 18 months is not a long period of time, that time period in conjunction with the dissimilarity of the offenses in the Indictment supports a finding by the Court of remoteness and dissimilarity precluding such evidence under Rule 403 and *Beechum*. (*Id.*)

8

      *6. Government's Post-Hearing Brief (Doc. 61)*

The Government begins its post-hearing brief by recapping the evidence it introduced at the March 20, 2024 evidentiary hearing. (Doc. 61 at 2.) According to the Government, the testimony of Detective Darryl Arnold and information found in his reports evidence how Livingston Parish detectives as well as detectives from the East Baton Rouge Parish Sheriff's Office were investigating the Defendant's drug trafficking activities. (*Id.*) Detectives from East Baton Rouge Parish had made two undercover purchases before March 9, 2021. (*Id.*) "On March 9, 2021, detectives arranged to meet the [D]efendant in East Baton Rouge Parish for one last undercover purchase of approximately one pound of methamphetamine and 2,000 tablets of ecstasy from the [D]efendant." (*Id.*) Agents observing his residence on that day saw him leave the residence and head towards East Baton Rouge to complete the transaction. (*Id.* at 2–3.) When the Defendant arrived at the meet-up site, he was arrested while in possession of approximately 14.36 ounces of methamphetamine, 2,000 suspected units of ecstasy, and 120 packs of suboxone. (*Id.* at 3.) That same day, detectives from the Livingston Parish Sheriff's Office found the following at his Weiss Rd. residence:

> <u>Master Bedroom</u>: (1) Plastic bag containing four dosage unit[]s of 4mg hydromorphone; (2) A glass jar containing suspected marijuana seeds; (3) Rubber containers and a glass container containing suspected THC Butane Hash Oil; (4) A plastic zip-seal bag containing approximately 18.4 grams of suspected THC wax; (5) Vacuum sealed bags, one containing 18 dosage units of Alprazolam, and two other vacuum sealed bags, each containing 100 dosage units of Alprazolam; (6) Digital scales; (7) Magnetic containers used to conceal controlled substances; (8) Approximately $356 in small denominations; (9) A loaded Davis Industries .22 caliber handgun; (10) A Mossberg Maverick 12 gauge shotgun; (11) A Romarm Arms AK-47 style rifle with magazine and ammunition; (12) Bottle containing approximately 58.5 dosage units of Alprazolam; (13) A Smith and Wesson .40 caliber handgun with magazine and ammunition; (14) A Glock .45 caliber pistol with magazine and ammunition; (15) A Ruger .38 caliber handgun; (16) A .22 caliber handgun; (17) Various

handgun magazines containing ammunition; and (18) Two magazines containing .223 caliber ammunition.

<u>Master Bathroom:</u> (1) A Remington Model 1100 12 gauge shotgun; (2) A Mossberg Model 500 20 gauge shotgun; (3) Approximately 79.9 grams of suspected methamphetamine; (4) Plastic bags containing a combined weight of approximately 38.4 grams of suspected ecstasy; (5) Glass jars containing suspected THC Butane Hash oil; (6) Two vacuum sealed bags, one containing approximately 134 dosage units of suspected ecstasy and the other one containing approximately 1,319 dosage units of suspected ecstasy; (7) Vacuum sealed bags (commonly used to package narcotics for sale); (8) Digital scales (commonly used to deal narcotics); (9) Magnetic containers (commonly used to conceal controlled substances); and (10) North American Arms .22 caliber handgun.

<u>Living Room Area</u>: (1) A medication bottle prescribed to H. Denton containing nine dosage units of clonazepam and[] six dosage units of amphetamine; (2) A Mossberg 410 shotgun; and (3) A money counter.

<u>Kitchen Area:</u> (1) A Glock 9 mm pistol with magazine and ammunition; and (2) A vacuum sealer.

<u>Shed:</u> (1) Black magnetic container containing two plastic bags of suspected heroin, a plastic bag containing suspected methamphetamine, a plastic bag containing suspected ecstasy powder, and a vacuum sealed bag containing two syringes containing suspected Psilocybin Mushroom Spores; (2) A Savage .22 caliber rifle with magazine and ammunition; (3) and a Remington 7MM-08 rifle with magazine and ammunition.

<u>Whitney Howze's Toyota Camry</u>: (1) Three dosage units of amphetamine; (2) A pill bottle prescribed to the [D]efendant containing 30 dosage units of amphetamine; and (3) Approximately $1,572 in small denominations.

(*Id.* at 3–4.)

Also, while at the home, "detectives observed Howze retrieve a bag from the bedroom." (*Id.* at 4.) When deputies took the bag from her and opened it, they found multiple bags containing large amounts of money, totaling about $28,055. (*Id.*) "Detective Arnold opined in his report that through his training and experience the large variety and amounts of controlled substances,

10

individually packaged narcotics, the packaging material, and cash were indicative of an intent to distribute." (*Id.*)

The Government again argues that this evidence is intrinsic rather than extrinsic and is highly relevant for the reasons set forth in its original memo in support. (*Id.* at 8–11.) The Government also argues that the evidence collected after his arrest is extrinsic though still relevant for the reasons set forth in its prior briefing, and its relevancy outweighs any prejudice against the Defendant it may have. (*Id.* at 9.)

> 7. *The Government's Reply to the Defendant's Post-Hearing Brief (Doc. 62)*

The Government begins by explaining that "[t]o date, the [D]efendant has not disavowed his intent to present the affirmative defense of entrapment." (Doc. 62 at 1.) It requests that in the event Defendant does proceed with his entrapment defense that the Court allow it to put on evidence of the Defendant's predisposition. (*Id.*) The Government's arguments again largely mirror those it made prior, but with respect to the controlled substances found on the Defendant at the Livingston Parish Detention Center, the Government asserts the following:

> Had law-enforcement agents seized the suboxone from the [D]efendant before his incarceration at a detention facility, the statements uttered by him would have a ring of truth. However, these pills were found while this [D]efendant was already incarcerated in a detention facility, where the demand for controlled substances by prisoners is high and access by prisoners to such drugs is by far more difficult in such a setting, increasing the demand for these drugs, and raising the dollar value per pill.

(*Id.* at 4.)

### B. Applicable Law

"Entrapment is an affirmative defense designed to ensure that persons not be held criminally liable for acts which they were induced to commit, without prior predisposition to engage in such activity, by law enforcement officials." *United States v. Johnson*, 872 F.2d 612,

11

620 (5th Cir. 1989). "In order to be entitled to rely on a defense of entrapment, a defendant must present some evidence that Government conduct created a substantial risk that an offense would be committed by a person other than one ready to commit it." *Id.* "Once this prima facie showing of entrapment has been made, the burden falls on the Government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime, and, therefore, was not entrapped." *Id.* (citation omitted). "The relevant focus is on the defendant's predisposition, intent or willingness to commit the crime prior to any contact with the Government agents rather than on the conduct of the agent." *Id.* at 620–21 (citation omitted).

> Moreover, the Fifth Circuit has explained:
>
> To determine whether "other acts" evidence was erroneously admitted, first we must determine whether the evidence was intrinsic or extrinsic. " 'Other act' evidence is 'intrinsic' when the evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). This evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place. *United States v. Kloock*, 652 F.2d 492, 494–95 (5th Cir. 1981); *see also*, *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992), *cert. denied*, 507 U.S. 911 [] (1993) (intrinsic evidence admissible so the jury may evaluate all the circumstances under which the defendant acted). Intrinsic evidence does not implicate Rule 404(b), and "consideration of its admissibility pursuant to Rule 404(b) is unnecessary." *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir.), *cert. denied*, 513 U.S. 1009 [] (1994).

*United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996).

With regard to extrinsic evidence, under Federal Rule of Evidence 404(b)(1), "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, under Federal Rule of Evidence 404(b)(2), "This evidence may be admissible for another purpose, such

12

as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The Fifth Circuit has "held that evidence of prior acts intended to rebut an entrapment defense falls within the ambit of Rule 404(b)." *United States v. Cervantes*, 706 F.3d 603, 615 (5th Cir. 2013) (citing *United States v. Hooker*, 997 F.2d 67, 76 (5th Cir. 1993)). "But any such evidence must still pass muster under Rule 403: its probative value may not be substantially outweighed by any unfair prejudice against the defendant." *Id.* (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) ("What the rule calls for is essentially a two-step test. First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403.")). Moreover, "evidence of extrinsic offenses that occur subsequent to the charged offense is not barred by Rule 404(b)." *United States v. Benavides*, No. 21-51211, 2022 WL 12309215, at *1 (5th Cir. Oct. 21, 2022), *cert. denied*, 143 S.Ct. 854 (2023). *See also United States v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir. 1980) ("Although we do not suggest that subsequent extrinsic offense evidence could never be admitted under rule 404(b), it certainly bears substantially less on predisposition than would a prior extrinsic offense.")

In *United States v. Beechum*, the Fifth Circuit "outlined a two-step test to determine the admissibility of evidence of a defendant's prior wrongful acts." *United States v. Cheramie*, 51 F.3d 538, 541 (5th Cir. 1995) (citing *Beechum*, 582 F.2d at 911). "Under *Beechum*, evidence of extrinsic offenses is admissible if it is (1) relevant to an issue other than the defendant's character, and (2) the incremental probative value of the evidence is not substantially outweighed by the

13

danger of unfair prejudice to the defendant." *Id.* (citing *Beechum*, 582 F.2d at 911). In *United States v. Shaw*, the Fifth Circuit explained:

> Rule 404 is a rule of inclusion, which admits evidence of other acts relevant to a trial issue except where such evidence tends to prove only criminal disposition. The rule is exclusionary only as to evidence admitted to establish bad character as such; it very broadly recognizes admissibility of prior crimes for other purposes.

*United States v. Shaw*, 701 F.2d 367, 386 (5th Cir. 1983) (citations omitted).

### C. Analysis

#### 1. *Intrinsic Evidence*

##### a. Seizure of Items on March 9, 2021, by Livingston Sheriff's Office

Given the closeness in time between the March 9, 2021 seizure and Cline's March 9, 2021 arrest and the fact that both events are related to Cline's possession of narcotics and related paraphernalia, this evidence qualifies as intrinsic evidence. *See, e.g.*, *Coleman*, 78 F.3d at 156. As such, "[t]his evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place[,]" and an analysis under FRE 404(b) is unwarranted. *Id.*

This evidence is highly relevant. A factor used in determining predisposition is a defendant's "demonstrated knowledge or experience in the criminal activity under investigation." *United States v. Chavez*, 119 F.3d 342, 346 (5th Cir. 1997) (citing *United States v. Madrigal,* 43 F.3d 1367, 1370 (10th Cir.1994) (internal quotation omitted)). Here, the evidence goes directly toward the Defendant's knowledge and experience in the drug trade, thereby making it relevant if the Defendant proceeds with his entrapment defense. These items being at Cline's home suggest that he had a predisposition to possess and intend to distribute drugs and was not enticed to do so by the Government. Therefore, this evidence is relevant per FRE 401. Further, there is nothing to suggest that this evidence is so prejudicial that it outweighs its probative value, and thus FRE 403

14

is satisfied as well. However, to the extent this evidence could prejudice Cline, the Court will instruct the jury as follows:

> You are here to decide whether the government has proved beyond a reasonable doubt that the [D]efendant is guilty of the crime charged. The [D]efendant is not on trial for any act, conduct, or offense not alleged in the [superseding] indictment.

Fifth Circuit Pattern Jury Instructions, § 1.21.

For these reasons, evidence of the March 9, 2021 seizure will be admitted at trial in the event that the Defendant proceeds with his entrapment defense.

### b. Undercover Purchase on February 3, 2021, and Testimony of Frank Beauchamp

As the Government asserts in its memo in support, "On or about February 3, 2021, while under the supervision of deputies with the EBRSO, Beauchamp purchased approximately 4 ounces of methamphetamine, 21.2 grams of heroin, and 3.1 grams of fentanyl from the [D]efendant, with funds supplied to him by the EBRSO. Beauchamp paid Cline approximately $3,900 for the drugs." (Doc. 54 at 3.) "On or about February 25, 2021, an undercover agent and Beauchamp met the [D]efendant and paid him $1,800 for four ounces of methamphetamine. During this encounter, [D]efendant told Beauchamp and the undercover agent that he was out of heroin, but he could replenish his supply later." (*Id.* at 3–4.)

Count One of Cline's Indictment is in relation to Cline's actions on February 25, 2021, (Doc. 1), which Beauchamp was privy to, (Doc. 54 at 3–4). Considering Cline's February 3, 2021 encounter with Beauchamp to be intrinsic evidence is consistent with the Eastern District's rationale in *United States v. Clark*, No. 99-77, 2000 WL 140567, at *1 (E.D. La. Feb. 7, 2000), which this Court cited to as support in *United States v. Alexander*, No. 14-126, 2015 WL 854028, at *2 (M.D. La. Feb. 26, 2015) (deGravelles, J.). In *Alexander*, this Court explained:

15

> The Court finds persuasive the case of *United States v. Clark*, No. 99–77, 2000 WL 140567, at *1 (E.D. La. Feb. 7, 2000) (Vance, J.). There, the Eastern [D]istrict held that the following was "intrinsic" evidence: (1) the defendant's prior history of drug dealing with the confidential informant and (2) of a drug buy between them that was arranged but never occurred. As in *Clark,* the highlighted statements in Exhibits 1–5 "complete[ ] the story of and [are] inextricably intertwined with the offense charged." *Id.* Further, as in *Clark,* this evidence shows "the nature of the relationship between the confidential informant and defendant and why the informant could expect to obtain [oxycodone] from defendant on the occasion at issue. This testimony is a natural part of the confidential informant's account of the circumstances surrounding the charged offense." *Id.* This is particularly true since, as the government notes, the comments at issue occurred during the same conversations as the discussions about buying oxycodone. Ultimately, the above statements "complete the story of the crime by proving the immediate context of events in time and place." *Coleman,* 78 F.3d at 156.

*Id.*

Since Beauchamp, a confidential informant, and Cline's encounter on February 3, 2021, completes the story between the two and is intertwined with Count One, this evidence is intrinsic. For this same reason, the Government cross examining Beauchamp about his drug trafficking relationship with Cline prior to March 9, 2021, also qualifies as intrinsic evidence, as such testimony would go directly to the relationship between the two and relates to Count One.

Further, this evidence is relevant to the Government rebutting Cline's entrapment defense because it weighs in favor of him being predisposed to selling narcotics. Here, the evidence goes directly toward the Defendant's knowledge and experience in the drug trade, thereby making it relevant if the Defendant proceeds with his entrapment defense. Thus, this evidence is relevant per FRE 401. Likewise, there is nothing to suggest that this evidence is so prejudicial that it outweighs its probative value and thus run afoul of FRE 403. However, to the extent this evidence could prejudice Cline, the Court will, as explained above, instruct the jury to consider only evidence

16

related to the crime charged when assessing the Defendant's guilt. *See* Fifth Circuit Pattern Jury Instructions, § 1.21.

Therefore, evidence of the undercover purchase on February 3, 2021, and the testimony of Frank Beauchamp will be admitted at trial in the event the Defendant proceeds with his entrapment defense.

### 2. *Extrinsic Evidence*

Given that the September 25, 2022 incident at the Livingston Parish Detention Center has no direct relationship to the events that led to the charged offenses, evidence of the Defendant's possession of controlled substances while there qualifies as extrinsic evidence. Therefore, an analysis under FRE 404(b) is warranted.

Under *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978), the Court must first determine if this evidence is being offered to prove something other than Cline's character. Given that the Government is attempting to introduce this evidence to counter Cline's entrapment defense through proving he had a predisposition to commit the charged crimes, and one of the factors used in determining predisposition is a defendant's "demonstrated knowledge or experience in the criminal activity under investigation" (*Chavez*, 119 F.3d at 346), *Beechum* is satisfied in this respect.

Next under *Beechum*, the Court must determine if the probative value of the evidence outweighs its prejudice. Like the evidence described above, this evidence is relevant because it speaks to Cline having a predisposition, as it "demonstrate[s] knowledge or experience in the criminal activity under investigation." *Id.* Here, the evidence goes directly toward the Defendant's knowledge and experience in the drug trade, thereby making it relevant if the Defendant proceeds with his entrapment defense. Though the Defendant claimed that he brought the controlled

17

substances into the Detention Center for his own use, as the Deputy's Investigation Report from the incident explains, "due to the abundance of both suspected narcotics found and seized[,] . . . the amount was too much for personal consumption and could have been easily distributed to other offenders." (Doc. 50-3 at 9.) Moreover, though there was a period of time between the March 9, 2021 arrest and the September 25, 2022 incident at the Detention Center and "temporal remoteness depreciates the probity of the extrinsic offense" (*Beechum*, 582 F.2d at 915), 18 months is not so remote as to hinder the relevancy of the September 25, 2022 incident. *See also United States v. Arnold*, 467 F.3d 880, 885 (5th Cir. 2006) ("We have upheld the admission of Rule 404(b) evidence where the time period in between was as long as 15 and 18 years. *See United States v. Hernandez–Guevara*, 162 F.3d 863 (5th Cir.1998); [*Chavez*, 119 F.3d 342 ]. Furthermore, '[t]he age of a prior conviction does not bar its use under Rule 404.' *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996)." (alteration in original)). Thus, this evidence is relevant per FRE 401.

Further, there is nothing to suggest that this evidence is so prejudicial that it outweighs its probative value. As the Fifth Circuit has explained, "The evidence presented was not inflammatory or heinous; the government did not seek to admit graphic, explicit, or otherwise evocative evidence." *Cervantes*, 706 F.3d at 616 (citing *Beechum*, 582 F.2d at 917 and explaining how the *Beechum* court affirmed "predisposition evidence that was not 'of a heinous nature' or likely to 'incite the jury to irrational decision by its force on human emotion' "). However, as explained above, the Court will instruct the jury to consider only evidence related to the crimes charged when assessing the Defendant's guilt in order to alleviate any undue prejudice the Government's evidence to rebut the Defendant's entrapment defense may cause. *See* Fifth Circuit Pattern Jury Instructions, § 1.21.

Therefore, evidence related to the Defendant's possession of controlled substances at the Livingston Parish Detention Center on September 25, 2022, will be admitted at trial in the event the Defendant proceeds with his entrapment defense.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Richard Lance Cline, Jr.'s *Opposition to Government's Intention to Offer Rule 404(b) Other Acts Evidence* (Doc. 52), which the Court treats as a Motion in Limine, is **DENIED.** The Court will allow the Government to introduce the above-mentioned evidence for purposes of rebutting the Defendant's entrapment defense only in the event the Defendant raises such defense at trial.

Signed in Baton Rouge, Louisiana, on June 5, 2024.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**